HERBERT M. CHASE & another, trustees, *vs.* GRACE N. SWITZER & others.

Middlesex.    December 7, 1953. — April 5, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Trust*, Amendment, Use of principal. *Equity Pleading and Practice*, Appeal, Proceeding for instructions. *Probate Court*, Appeal. *Evidence*, Extrinsic affecting writing.

A trustee in a proceeding for instructions has a right to appeal from the decree in order to test in this court the adequacy of the instructions given by the decree.   [303]

Under an inter vivos trust providing for payments of income and principal to the settlor during her life in the discretion of the trustee and for disposition of the trust property after her death, with a provision whereby she "expressly" reserved the right to amend "that part of this Trust which is effective during her lifetime" and waived "any . . . right" to revoke the trust or to amend "that part [t]hereof which is to become effective upon . . . [her] death," a purported amendment by her requiring the trustee to pay to her, regardless of his approval, such amounts of principal or income as she should request from time to time, with a contemporaneous demand for an immediate transfer to her of about one half of the principal, was valid and should be honored by the trustee at least to the extent of the transfer demanded, notwithstanding that thereby the amount of the trust fund remaining at her death might be reduced.   [304–305]

In a proceeding for instructions by a trustee, certain extrinsic evidence could not be used to contradict the terms of the instrument of trust and was properly excluded where it did not appear to be of any assistance in the interpretation of any doubtful terms in the instrument.   [305]

Upon a petition by the trustee of an inter vivos trust for instructions as to his "duty after . . . [his] receipt of" a letter from the settlor purporting to amend the instrument of trust so as to require the trustee to make payments of trust principal or income to the settlor upon her request from time to time and also containing a demand on the trustee for an immediate transfer to her of a substantial portion of the principal, an instruction that the trustee transfer to her the principal then demanded was adequate in the circumstances.   [306]

PETITION, filed in the Probate Court for the county of Middlesex on April 21, 1952.

The case was heard by *Monahan, J.*

*George H. Chase,* for the petitioners.

*Frank Wilson,* (*B. Ralph Slobodkin* with him,) for the respondents.

QUA, C.J. This is a petition by trustees for instructions. Under date of November 26, 1949, Grace N. Switzer, a woman advanced in years and impaired in health, executed a declaration of trust whereby, as amended by her on or about December 14, 1949, she assigned to the petitioners all her personal property in trust to pay to her or for her benefit during her life so much of the income and principal as they might deem wise for her maintenance, comfort, support, and enjoyment; to pay to her son Frederick N. Switzer, or to his wife, or to the survivor of them, the sum of $125 each month for twenty-four months, subject to certain conditions[1]; to make other payments during the life of the donor when requested by her in writing and approved by them; upon the death of the donor to pay her debts and funeral and burial expenses and thereafter to pay to Frederick N. Switzer $200 each month until the fund should be exhausted or until the death of Frederick; and then, after paying the expenses of his last illness and funeral, to pay all funds remaining to a nephew of the donor, if living, otherwise to the nephew's wife, if living.

The amendment to the declaration of trust which was made on or about December 14, 1949, contained a provision relative to future amendments which was inserted in lieu of the unrestricted power to amend or revoke contained in the original declaration. The new provision reads as follows: "The Donor expressly reserves the right and power to amend or modify that part of this Trust which is effective during her lifetime, by a writing, signed by her, delivered to the Trustees or either of them. The Donor expressly waives any further right or power to revoke this Trust, or to modify or amend that part hereof which is to become effective upon the death of said Donor."

On February 20, 1952, the donor notified the trustees by

---

[1] The time for making these payments has expired and presumably they have been completed.

letter that the declaration of trust was to be so amended that they were to pay for her use or to her such sums out of principal or income as she should from time to time request free from approval or consent of the trustees, and in the same letter she demanded that they turn over to her at once all savings bank accounts, free from the control of the trustees. These bank accounts represented slightly more than half of the corpus of the fund, which was then approximately $30,000. The petitioners prayed that the court "interpret their duty after the receipt of the letter of February 20, 1952." The judge entered a decree that "said trustees turn over to said Grace N. Switzer all savings bank accounts in their hands free of any trust." The petitioners appeal.

Before the cause was reached for argument in this court the respondents moved that the appeal be dismissed on the ground that the trustees had no interest in the outcome of their petition and were not persons aggrieved by the decree within the meaning of G. L. (Ter. Ed.) c. 215, § 9. *Dockray* v. *O'Leary*, 286 Mass. 589. *Weston* v. *Fuller*, 297 Mass. 545, 548. *Ballard* v. *Maguire*, 317 Mass. 130. *Hirshson* v. *Gormley*, 322 Mass. 130. But one contention of the petitioners was that the decree did not sufficiently instruct them as to their continuing duties under the trust in the present circumstances. We were of opinion that the trustees were entitled to instructions which would be adequate to enable them to proceed safely and that they had a right of appeal to test in this court the extent and adequacy of the direction given them. We therefore denied the motion. *Boyden* v. *Stevens*, 285 Mass. 176, 180. *McKay* v. *Audubon Society, Inc.* 318 Mass. 482, 484–485.

Now, however, after full consideration of the case, we are of opinion that not only was the instruction, correctly interpreted, a sufficient guide for the action then required of the trustees, but also that it was correct in law. Since these two issues are interwoven to a great extent we shall not cloud this opinion by attempting to limit it strictly to the matter of adequacy.

At the root of the controversy lies the question whether the purported amendment of February 20, 1952, requiring the trustees to turn over to the donor all savings bank accounts was within the power of amendment reserved to the donor and hereinbefore quoted in full. That reserved power included in its first and dominant sentence the right to amend or modify "that part of this Trust which is effective during . . . [the donor's] lifetime." The part referred to must have included the part which defined the duty of the trustees to make payments to the donor during her life. The power to amend or modify that part was "expressly" reserved without limitation of any kind, unless indeed the second sentence is in itself a limitation upon the first — a question with which we shall deal presently. Unless so limited, the first sentence reserved a power to require any payments to the donor that she might desire free from any exercise of discretion by the trustees, even to the extent of the withdrawal from the trust of all the savings bank deposits. We have been unable to discover any logical stopping point that would not permit the reserved power to amend or modify to be carried at least as far as this. *Stahler* v. *Sevinor*, 324 Mass. 18, 21–22. Whether in view of the second sentence that power goes so far as to permit the practical revocation by indirection of the entire trust need not be determined, since there was no attempt to revoke and a substantial portion of the trust fund will remain unaffected by the letter of February 20, 1952.

We cannot subscribe to the petitioners' contention that the second sentence of the power to amend wherein the donor waived "any further right or power to revoke this Trust, or to modify or amend that part hereof which is to become effective upon the death of said Donor," precluded the amendment that was made. This sentence in form, substance, and position seems to us subordinate to the first sentence. The part of the trust that is to become effective upon the death of the donor concerns only so much of the fund as may remain at that time and may not have been paid out in the donor's lifetime either under the original

terms of the trust or under the terms as amended by the donor. The letter of February 20, 1952, does not attempt to modify or amend the disposition of this remainder, if any there shall be. We cannot adopt the argument of the petitioners that any change which would or might reduce the *amount* of the remainder was forbidden by this second sentence. Whether there would be any remainder after the donor's death was a matter of speculation before as well as after the letter of February 20. That depended upon the longevity and state of health of the donor and other factors. To say that the second sentence of the reserved power forbade any changes under the first sentence that might reduce the amount of the remainder would leave so narrow a scope for the operation of the first sentence that it would become little more than a futility. It cannot be supposed that the donor intended that.

Neither do we accept the petitioners' contention that there was error in refusing to admit in evidence a letter from Mrs. Switzer to her son, a promise in writing by the trustees to the son to make certain payments to him in accordance with the terms of the trust and to deliver a deed to him in escrow of property not included in the trust, and oral evidence of the relations between the donor and her son, all as of approximately the time of the insertion of the present reserved power to amend into the original trust. This evidence would tend to show the family situation at that time and to some extent the motives of the parties, but a careful examination of it fails to disclose that it would have been of any assistance in the interpretation of any doubtful terms in the declaration of trust, and of course it could not be used to contradict the terms of the declaration. Williston on Contracts (Rev. ed.) §§ 629, 630. *Kerwin* v. *Donaghy*, 317 Mass. 559, 567–569, and cases cited.

However unfortunate it may seem to the trustees that this elderly lady should be deprived of their protection as to more than half of her property, she acted within her rights, and they must respect her wishes.

The trustees in their petition requested the court to instruct them as to their duty "after the receipt of the letter of February 20, 1952." The court correctly instructed them that their duty then was to turn over the savings bank accounts to the donor free of trust as required by the letter. The turning over of these bank accounts will merely withdraw the deposits from the trust fund. It will not in itself change the terms upon which the rest of the fund will be held. It will be the duty of the trustees to proceed as before in relation to the fund still in their hands unless and until the donor makes some new request for payment to her free from approval or consent of the trustees. However, in determining whether they should make discretionary payments to her out of the remaining trust assets they may, of course, under the terms of the trust take into account whether and to what extent her needs at any given time are affected by her possession of the bank accounts or their proceeds. We think all this is implicit in the decree as entered, and that the court was not required to go farther at this time. *Cronan* v. *Cronan,* 286 Mass. 497, 499.

*Decree affirmed.*